### [No. 4007.]

## THE HECTOR MINING CO. ET AL. V. THE VALLEY VIEW MINING CO.

1. WATER RIGHTS—PLEADING—ABANDONMENT—ESTOPPEL—INCREASE OF NATURAL FLOW OF STREAM.

In an action to establish priority of water rights and to restrain defendants from interfering therewith, defenses of abandonment, estoppel and increase by defendants of the natural flow of the stream are defenses of new matter and must be specially pleaded.

2. WATER RIGHTS—PLEADING.

In an action to establish priority of water rights and to restrain defendants from interfering therewith where the complaint alleged in one paragraph that plaintiff was entitled to and had beneficially used 110 miner's inches of water, and in a subsequent paragraph alleged that it required the immediate and uninterrupted use of 10 miner's inches for milling purposes and the evidence showed that the 10 inches were claimed as necessary for operating plaintiff's stamp mills and vanners and the rest of it for power purposes in operating the machinery of the

mill, and that the 110 inches constituted the quantity needed for the two distinct purposes, the plaintiff was not limited by his pleading to a decree for 10 miner's inches.

3.    WATER RIGHTS—APPROPRIATION—ABANDONMENT.

Where plaintiff claimed an appropriation of water from two creeks and the point of diversion was from one creek above the point of confluence, but before defendants' rights had attached he built a dam in the other creek and a ditch therefrom through which he caused the water to flow from the second creek into the first above the point of diversion and thence into and through a ditch to the place of use, it was an appropriation of the water of both creeks, and a cessation of the use of the ditch between the creeks without an intention to abandon, was not an abandonment of the water of the second creek. And where defendants subsequently constructed a ditch above plaintiff's by which they conducted water from the second to the first creek and thence to their mills and after its use turned the water of both creeks back into the first so that it ran down to plaintiff in sufficient quantity to supply its appropriation, plaintiff was not required to keep up its ditch between the creeks or to take water directly from the second in order to preserve its priority of right thereto.

4.    APPELLATE PRACTICE—FINDINGS OF FACT.

Findings of fact by the trial court upon conflicting evidence will not be disturbed by courts of review merely because, from an inspection of the record, they feel that if they had been sitting as triers of fact they would have come to a different conclusion.

5.    WATER RIGHTS—DECREE—RETURN OF WATER.

•    In an action to restrain defendants from interfering with plaintiff's prior appropriation defendants cannot complain of that part of a decree which provides that as long as defendants return the water diverted by them to the natural stream after they have used it in sufficient quantity to supply plaintiff's appropriation this should not be considered a violation of the injunction granted.

*Appeal from the District Court of San Miguel County.*

Mr. CHAS. J. HUGHES, Jr. and Messrs. GERRY & TRIPP for appellants.

Messrs. HOGG & HAMMIL for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court

Each of the parties to the action claims to be an owner of

an appropriation of water for power and milling purposes diverted from Marshall and Savage creeks, natural streams in San Miguel county. The plaintiff claiming the prior appropriation of more than 100 miners' inches, and the defendants disputing such priority and quantity and asserting a superior title in themselves, this action was brought by plaintiff (appellee here) to obtain a decree of court establishing its priority of right to the quantity claimed, and to restrain defendants (appellants here) from interfering therewith.

The findings of fact were in favor of plaintiff, and a decree was rendered establishing its priority of right in the waters of said streams to the extent of 25 miners' inches. The defendants appealed, and rely for reversal upon the following propositions: (1) An abandonment by plaintiff; (2) an estoppel *in pais;* (3) that they have added to the natural flow of the streams in question a quantity of water equal to, or greater than, the amount which they have diverted; (4) that there is no evidence in support of the findings and decree.

1. Abandonment, estoppel, and the defense of increasing the natural flow of the stream, are defenses which come within the general definition of new matter, and must be specially pleaded. This court has so held as to estoppel, and the same principle applies to the other two defenses. *Prewitt v. Lambert*, 19 Colo. 7; *Gaynor v. Clements*, 16 Colo. 209; *De-Votie v. McGerr*, 15 Colo. 467; 8 Enc. Pl. & Pr., 7 and notes; Bliss on Code Pleading (3d ed.) § 364. We are unable to find in the answer any mention at all of the last defense, and it is only by way of inference that it can be said to contain a plea of abandonment. Certainly the latter is not well pleaded. There are present some elements of an estoppel which, however, is not set forth with the required particularity. But, waiving questions of pleading, it is sufficient for the purposes of this opinion to say that a careful examination of the testimony shows that neither of these defenses is made out.

As to the last defense, it is also to be observed that the decree awards to plaintiff 25 miners' inches of water *naturally* flowing in the streams; by implication excluding from its operation any flow resulting from an addition thereto from other sources.

2.    Counsel for appellants concedes (as under our practice he must) that where there is a substantial conflict in the evidence the findings below will not be disturbed; but he insists that in several important particulars the findings, as made by the trial judge, have no support whatever in the evidence. He also maintains that the plaintiff, by alleging in the eleventh paragraph of the complaint that it requires the immediate and uninterrupted use of at least 10 miners' inches of water for milling purposes, has thereby limited itself to that amount, and the decree in its favor for 25 is excessive and unwarranted by the pleadings, as well as the evidence.

As to the former part of this contention, defendants are evidently under a misapprehension, for in the fifth paragraph there is a positive allegation that plaintiff is entitled to, and has beneficially used, at least 110 miners' inches of water.    The apparent inconsistency in these two paragraphs is removed by the evidence which shows that the 10 inches of water which the plaintiff alleges was needed for its immediate use was water which was claimed as necessary for operating its stamp mills and vanners and the rest of it for power purposes in operating the machinery of the mill, and that 110 inches constituted the quantity needed for the two distinct and separate purposes.

There is really no substantial difference in the evidence as to which appropriation is prior in time.    In this particular, it is clearly in favor of plaintiff, and the finding of the court to that effect is right.    But it must be confessed that there is considerable uncertainty as to the quantity of water originally diverted and beneficially used by plaintiff and its grantors.    The diversions of both parties were used for

operating stamp mills and propelling the connecting machinery. The appropriation of plaintiff dates from May 2, 1891, and its stamp mill was erected during that year, and the quantity of water diverted and used the first year of its operation was probably not so large as in 1892 and thereafter, and this increased quantity was required by reason of the enlargement of the mill or the addition to its equipment. But the claim of plaintiff's grantors at the time of the original diversion was for 1,000 miners' inches, and the time within which it has made beneficial use of at least 25 inches of water (if it has made use of that amount) was within a reasonable time after the enterprise was set on foot.

Under the decree the priority in favor of plaintiff attaches to the waters of both streams. The defendant strenuously insists that plaintiff has never made any use of the waters of Savage creek, but that its appropriation was made wholly from Marshall creek above the confluence of the two streams. It is unquestionably true that plaintiff's original point of diversion was from Marshall creek about eighty feet above the confluence; but it also appears that during the summer of 1891, and before defendant's rights attached, plaintiff, because of low stage of water in that creek, built a dam in Savage creek and an open ditch therefrom to a point in Marshall creek above the dam or flume by means of which its original diversion was made, and caused the water from Savage creek to flow through this ditch into Marshall creek, and thence into and through its flume and ditch and down to its mill, where application thereof for power and milling purposes was made. It is not clear how long this was continued. The cessation of the use by plaintiff direct from Savage creek, however, does not, under the facts, operate as a forfeiture of a right longer to divert and use from that source. There was no intention to abandon.

An additional circumstance furnishing a reason why it was not necessary for plaintiff to convey water from Savage

to Marshall creek, and still retain the right to the appropriation from both streams, is the method of diversion employed by defendants. They diverted water from Marshall creek at a point thereon several hundred feet higher up the stream than the intake of plaintiff's ditch, and also built a ditch from Savage to Marshall creek, and to a point on the latter above their penstock therein, and the waters of the two streams thus diverted, after being utilized for power and mining purposes, were discharged into Marshall creek at a point above the dam and intake of plaintiff's ditch. So that as long as defendants maintained this method and returned to Marshall creek a quantity of water equal to plaintiff's appropriation, it was not necessary for the latter to keep up its ditch connecting the two streams.

The original flume by which plaintiff's diversion was carried was abandoned, and a pipe line constructed through which the water was carried to its mill. In the decree provision is made that so long as defendants use the water and discharge it, as at present, so that the same may be utilized by the plaintiff, such act shall not be considered a violation of the injunction which went to restrain defendants from the use of the 25 miners' inches of water so long as the plaintiff needed the same.

Complaint is made that there was not sufficient evidence before the court from which it could determine the quantity of water actually applied by the plaintiff to a beneficial use. We have examined the record with much care with respect to all of the objections urged by counsel, and particularly with reference to this specification. As we view it, the testimony of defendants' own witnesses furnishes ample support for this determination. Defendants concede that plaintiff's appliances for diverting the water were sufficient to carry the decreed amount, but insist that there is no evidence that such a quantity was ever beneficially used by plaintiff. There is testimony by several witnesses introduced by the

plaintiff from which a trial court might find as it did. It is the general rule in courts of review, subject, of course, to certain exceptions, that findings of fact will not be disturbed merely because the judges, from an inspection of the printed record, feel that if they had been sitting as triers of fact they would have come to a different conclusion. And while we are not disposed to controvert defendants' contention that there is evidence in the record justifying an award to plaintiff of a less quantity than that made by the trial court, and that there is ground for defendants' criticism of other findings, we are forced to the conclusion that they have sufficient legal support in the facts which the record discloses; and that our established rule precludes us from setting them aside. We can not do so without violating our established practice.

We are impressed with the liberal provisions of the decree in the particular just mentioned, that so long as defendants continue to return to the natural stream, after they have had the benefit of the water diverted for their own purposes, a quantity sufficient to meet the appropriation of the plaintiff, this should not be considered a violation of the injunction granted. At a comparatively trifling expense, and by employing their present, or slightly increased, facilities for carrying water to their own mill and returning it, defendants may restore to the stream at a point above the intake of plaintiff's pipe line the quantity to which it is entitled so long as the required volume of water naturally flows in the bed of the streams at the intake of its pipe line. We cannot see how defendants can reasonably complain of this, in view of the finding that they are junior appropriators.

In view of the positive findings made by the court below, we have nothing to do, under the established rule in the court, but to affirm the judgment.

*Affirmed.*